Robert W. Cacace, J.
This is a dispossess proceeding brought on by petitioner landlord against respondent tenant alleging that rent for the months of December, 1969 and January, 1970 in the amount of $170 per month were due and unpaid.
By stipulation between the parties at the trial, it is admitted that the December, 1969 rent was paid, .but that the January, 1970 rent is unpaid.
The tenant has interposed a defense to the proceeding stating that a defective pipe in the ceiling of her bathroom emits a steady flow of water that makes it impossible to use the shower and tub, and difficult to use the other facilities in the bathroom; that this condition has existed for over two years, and that in *172 addition, her apartment is infested with rodents and vermin. Based upon the foregoing, the tenant has moved to stay the dispossess proceeding under section 755 of the Real Property Actions and Proceedings Law. The pertinent parts of the section in question, which affects property outside of the City of New York by amendment effective September 1, 1969, read as follows:
“ 1. (a) Upon proper proof that a notice or order to remove or cease a nuisance or a violation or to make necessary and proper repairs has been made by the municipal department charged with the enforcement of the multiple dwelling law, the multiple residence law, or any other applicable local housing code, or officer or officers thereof charged with the supervision of such matters, if the condition against which such notice or order is directed is, in the opinion of the court, such as to constructively evict the tenant from a portion of the premises occupied by him, or is, or is likely to become, dangerous to life, health, or safety, the court before which the case is pending may stay proceedings to dispossess the tenant for non-payment of rent or any action for rent or rental value. In any such proceeding, on the question of fact, as to the condition of the dwelling the landlord or petitioner shall have the burden of disproving the condition of the dwelling as such condition is described in the notice or order.
“ (b) Upon proper proof of the existence of a condition that is in the opinion of the court, such as to constructively evict the tenant from a portion of the premises occupied by him, or is, or is likely to become, dangerous to life, health, or safety, the court before which the case is pending may stay proceedings to dispossess the tenant for non-payment of rent, or any action for rent or rental value.”
The recentness of this statute’s application to jurisdictions outside of New York City, the changes in the amended statute and the paucity of cases, both under the amended statute and its predecessor statutes, indicate that a close examination of the statute and its antecedents is in order.
The original statute allowing tenants to withhold rent for inadequacies on the part of the landlord’s operation of his premises was enacted in 1939, and was known as section 1446-a of the Civil Practice Act. With the adoption of the Beal Property Actions and Proceedings Law, subdivision 1 of section 1446-a of the Civil Practice Act was taken verbatim and re-enacted as section 755 of the Real Property Actions and Proceedings Law. The effect of the new statute was still limited to the City of New York.
*173 The section set up two basic requirements which had to be met before the tenant could take advantage of its provisions. A violation had to have been filed by New York City authorities, and the violation must have been “ such as to constructively evict the tenant from a portion of the premises occupied by him ”.
The latter requirement, because of the established requirement of abandonment of premises before a constructive eviction can be pleaded, (33 N. Y. Jur., § 169, p. 510) has caused some interpretation problems. The Supreme Court, in Matter of Emray Realty Corp. v. De Stefano (5 Misc 2d 352) on interpreting section 1446-a of the Civil Practice Act, held that the tenant need not leave or abandon the premises. On page 354, the court states: 1 ‘ Petitioner claims that there can be no constructive eviction unless the tenant is actually forced to leave the premises. This is not so. An action for damages on account of a constructive eviction will not be entertained on behalf of a tenant in possession, but this is a far different matter.”
In an appeal decided by the Appellate Term, Second Department in 1964, based upon section 755 of the Real Property Actions and Proceedings Law, (Gombo v. Martise, 44 Misc 2d 239) the court in reversing the decision of the Civil Court of New York, (Gombo v. Martise, 41 Misc 2d 475) which latter decision upheld the right of a tenant to plead the defense allowed rmder section 755 of the Real Property Actions and Proceedings Law, without removing from the premises, stated: “Nor may the tenants in the absence of actual removal from the premises, claim constructive eviction so as to defeat these nonpayment proceedings.”
The statute by its 1969 amendment makes the question of constructive eviction and removal from the premises academic, for it gives as a further ground that the premises “is or is likely to become, dangerous to life, health, or safety ”. In addition, the law is further expanded so that the limitation of a filed or recorded violation is no longer a necessary prerequisite. Subdivision b of section 755 of the Real Property Actions and Proceedings Law states, “proof of the existence of a condition” will be sufficient.
The present state of the law is that if the tenant can establish that a violation has been filed or a condition exists which either constructively evicts him from a portion of the premises or creates a condition which is, or is likely to become, dangerous to his life, health or safety, he may then request a stay of the dispossess proceedings and pay the rent into court.
*174 In the instant case, although testimony was given by a health inspector of the City of Yonkers, no record of violations were offered into evidence. The testimony of the health inspector would be sufficient, however, if it showed a condition which was or was likely to become dangerous to the life, health or safety of the tenant. He stated that in March, 1969, he had observed rodents and vermin on the premises and saw wall damage in the tenant’s bathroom; that the rodent and vermin situation in the apartment was subsequently corrected, and the defective ceiling was not. He further stated that when he examined the ceiling, it was dry and not dangerous, but it was ‘ ‘ potentially dangerous.” On cross examination, he stated that the leak seemed to. come from a waste line. The tenant stated that the leak came regularly every morning and night for over two years, and still existed. The landlord, through its agent, testified that the condition had been rectified in December of 1969, and it had received no further complaints from anyone.
The rodent and vermin condition has been rectified. As to the ceiling plaster, the naked testimony of the inspector that the condition was “ potentially dangerous,” at least, if there is no written formal record of violation made by a proper person in the course of the proper obligation and responsibilities of the proper city department, must fail. The inspector, without the foregoing, must show some specifics upon which he bases his conclusion. For example, that the ceiling wall had sagged or that the composition of the material which made up the wall had changed or some technical reason why he feels the condition is, or is likely to become dangerous to ‘ ‘ life, health or safety. ’ ’
The defense of the tenant is therefore dismissed, and the petition of the landlord is granted.